IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEREMY FORD and DENISE FORD,

    Plaintiffs,

  v.

SHERIFF GREG MUNKS in his capacity
as Sheriff for the SAN MATEO COUNTY
SHERIFF'S DEPARTMENT, DEPUTY
ZAIDI, inclusive, individually and in his
capacity as Deputy for SAN MATEO
COUNTY SHERIFF DEPARTMENT,
and DOES 1–25, inclusive,

    Defendants.

No. C 13-00532 WHA

**ORDER DENYING
PLAINTIFFS' MOTION
FOR LEAVE TO FILE
AN AMENDED COMPLAINT**

## INTRODUCTION

In this Section 1983 action, plaintiffs move for leave to file a second amended complaint. For the following reasons, plaintiffs' motion is **DENIED**. This will be, however, without prejudice to filing a separate action against the officer in question, in which case the new action will, upon notice, be related to the undersigned judge.

## STATEMENT

All facts are taken from the proposed second amended complaint. On December 15, 2011, plaintiffs, husband and wife, Jeremy and Denise Ford arrived at the Redwood City Caltrain station with the intent to take the train home to San Francisco. They arrived at around the same time as the next departing train was pulling into the station. Mr. Ford, having already purchased

a ticket, boarded the train. Ms. Ford, who did not have a ticket, went to purchase one from the ticket processor on the train deck. As Ms. Ford finished her transaction and hurried to board the train, the doors began to close. Mr. Ford slid his hand between the closing doors to allow his wife to board the train. After plaintiffs found seats, but before the train had started moving, a Caltrain employee approached them and ordered Mr. Ford off the train for interfering with the closing of the doors. When Mr. Ford refused, the Caltrain employee threatened to involve the police. Plaintiffs then switched train cars to find different seats and avoid any further confrontation with the Caltrain employee (Second Amd. Compl. 3).

After a period of time, a number of San Mateo County Sheriff's deputies approached plaintiffs. The deputies asked plaintiffs to exit the train. Mr. Ford, an attorney, explained that nothing illegal had occurred and that the Caltrain employee was exaggerating the situation. Ms. Ford maneuvered past Mr. Ford and exited the train (*id*. at 4).

The deputies then grabbed Mr. Ford and threw him into the stairwell, forcing him to the ground. They proceeded to shove Mr. Ford's face into the ground. Mr. Ford offered no resistance except voicing his objections to the situation. Deputy Zaidi then punched Mr. Ford in the head several times. During this attack, Ms. Ford reentered the train because she heard Mr. Ford shouting. Ms. Ford attempted to coax the deputies off of her husband by showing them her boarding ticket and explaining that they had a lawful right to be on the train. Ms. Ford attempted to explain that the train was leaving early and that plaintiffs had done nothing wrong (*ibid*.).

The deputies then requested that Ms. Ford leave the train cabin. Shortly thereafter, plaintiffs exited the train. Mr. Ford was in handcuffs and was placed on a train deck bench. On the train deck, Ms. Ford was approached by Deputy Zaidi who pushed her to the ground, causing her to hit her head. Mr. Ford demanded that the deputies not hurt his wife and attempted to sit up from the bench. Deputy Baron hit Mr. Ford in the face several times, breaking his nose. Deputy Baron then pepper sprayed Mr. Ford while he was in handcuffs. Ms. Ford attempted to defend her husband and was also pepper sprayed (*ibid*.).

Afterward, a Redwood City police officer assisted Ms. Ford and ordered a saline drip to help with the pepper spray burns. When Ms. Ford was able to see again, they took her to the

1  police station. Mr. Ford was taken to the hospital in an ambulance for medical observation.
2  After being medically cleared, Deputy Zaidi proceeded to take Mr. Ford to the police station
3  (*id.* at 5). Plaintiffs were later criminally prosecuted for delaying a train, resisting arrest, and
4  assaulting a police officer (*ibid.*).

5  Plaintiffs brought the present action against Sheriff Greg Munks, Sherriff's Deputy Zaida
6  and Does 1–25. Plaintiffs allege Section 1983 violations; assault and battery; intentional
7  infliction of emotional distress; negligent infliction of emotional distress; violations of California
8  Civil Code Section 52.1; and Negligence (*id*. at 6–11).

9  On August 1, 2013, a case management conference was held. Plaintiffs failed to appear.
10 The case management order held that Doe defendants were to be named and served by August
11 30, 2013 (Dkt. No. 18). On October 8, 2013, thirty-nine days after the amendment was due,
12 plaintiffs filed this motion for leave to file a second amended complaint in order to add Doe
13 defendant Deputy Baron (Dkt. No. 23). Plaintiffs aver that the sheriff's department would not
14 release the arrest report until after this action had been filed (*id*. at 5). In their response,
15 defendants argue that plaintiffs have failed to demonstrate good cause for permitting a Doe
16 defendant to be added nearly six weeks after the deadline (Dkt. No. 28). Defendants note that
17 plaintiffs obtained various arrest reports containing the name of Deputy Baron prior to their
18 criminal prosecution, more than a year and a half before making this motion (*id*. at 3 n.1).

19 On October 30, the undersigned judge requested that plaintiffs' counsel identify when he
20 first had access to the arrest reports containing Deputy Baron's name (Dkt. No 30). Plaintiffs'
21 counsel stated under penalty of perjury that he first obtained the arrest reports when plaintiffs
22 brought them to him on September 27, 2013, eleven days prior to filing this motion
23 (Dkt. No. 31).

24 On November 14, a hearing was held. In arguing that plaintiffs were not diligent in
25 amending their complaint, defendants showed a medical report from the day after the incident to
26 counsel and the Court. The medical report included the line, "name of anyone Patient alleges
27 inflictd (sic) the Injury: Mike Barron and 3–4 others." The undersigned judge requested
28 supplemental declarations identifying, under oath, when Mr. Ford and plaintiffs' counsel "first

3

1 learned Deputy Baron's name and addressing the issue of diligence" (Dkt. No. 33).  On
2 November 21, Mr. Ford responded that he learned the name of a different deputy during the
3 assault, but first "learned the names of other involved deputies during the course of criminal
4 proceedings related to the subject incident" (Dkt. No. 34).  Plaintiffs' counsel stated that he first
5 learned Deputy Baron's name when plaintiffs brought him the criminal file on September 27,
6 2013 (Dkt. No. 34-1).

## ANALYSIS

To amend a complaint by adding parties after the deadline to do so has past, plaintiffs must satisfy Rule 16(b) to modify the scheduling order.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).  Under Rule 16(b), any modification to the scheduling order must be based on a showing of good cause, which entails the following:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment . . . Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  If the party was not diligent, the inquiry should end.

*Id.* at 607–08.  Generally, the focus of the diligence inquiry is on the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading.  *See Zivkovic v. S. Cal. Edison Corp.*, 302 F.3d 1080, 1087–88 (9th Cir. 2002).  A court may deny as untimely a motion to amend filed after a scheduling order cutoff date if no request to modify the order was made.  *Johnson*, 975 F.2d at 608–09.

Once Rule 16(b) is satisfied, the requirements of Rule 15 must also be met.  *Id.* at 608.  Under Rule 15, leave to amend should be freely given when justice so requires.  The underlying purpose of Rule 15 is to facilitate decisions on the merits, rather than on the pleadings or technicalities.  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  Leave to amend should generally only be denied under Rule 15 "upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party."  *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011).

Since the deadline for amendments has passed, the requirements of Rule 16 must be satisfied.  Plaintiffs argue that they were diligent in obtaining Deputy Baron's name, as the

4

1  sheriff's department would not release the arrest reports until after this action had been filed.
2  Defendants respond that plaintiffs were not diligent because they had already obtained the arrest
3  reports containing Deputy Baron's name in a *Pitchess* motion filed in the underlying criminal
4  case in March 2012 (Opp. 3).  Consequently, plaintiffs and their counsel in the criminal
5  prosecution had these records nearly a year before filing this action and nearly year and a half
6  before making this motion.  Plaintiffs reply that "defendants cannot reasonably suggest plaintiffs
7  or their [civil] counsel were integrally involved in the motion practice of [the] criminal action.
8  Plaintiffs' counsel was not provided the file from the related criminal action until after the
9  deadline set in the scheduling order had passed" (Reply Br. 3).

10  This order cannot square Mr. Ford's sworn declaration under oath — stating that he did
11  not learn Deputy Baron's name until some point during the criminal proceedings — with the
12  medical report from the night of the incident that states, "name of anyone Patient alleges inflictd
13  (sic) the Injury:  Mike Baron and 3–4 others."  The medical report was discussed at the hearing,
14  as well as, in the order requesting supplemental declarations.  Yet, plaintiffs have not explained
15  the discrepancy between their version of events and the evidence.  Even if Mr. Ford first learned
16  Deputy Baron's name during the criminal proceedings, this occurred well before the case
17  management order deadline for identifying Doe defendants in this action.  Accordingly,
18  whatever the truth may be, plaintiffs have failed to demonstrate the diligence necessary to satisfy
19  the requirements of Rule 16(b).  If plaintiffs wish to bring suit against Deputy Baron, they will
20  have to do so in a separate action.

5

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for leave to file an amended complaint is **DENIED**. This may wind up being a futile exercise for the defense inasmuch as plaintiffs' counsel states the time within which to file a separate action against deputy Baron has not expired, so that the only effect of this exercise is to force plaintiffs to pay another filing fee. If the new suit is eventually related, both cases will probably be consolidated. Defense counsel will be held to the same strict standard of conduct it has insisted on for plaintiffs.

**IT IS SO ORDERED.**

Dated: December 2, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE